All right, the next case we'll hear is United States v. Shibin and Mr. Broccoletti, when you're ready we'll hear from you. Good morning, may it please the court. My name is James Broccoletti and I represent Mohammad Shibin before this court. In Deere, this court decided that the law of 1651, the law of piracy, was going to be defined according to the law of nations and the unclosed convention. We do not challenge that court's decision, we don't challenge the precedent, but the issues that are present in this case were not present before the court in Deere, namely whether or not there can be accomplice liability for an individual who has never left the country of Somalia. The defendant in this particular case is unrebutted, continued in the country of Somalia or in the territorial waters of Somalia. He never left and never was on the high seas. So the question presented before this particular court is whether 1651 and unclosed covers that particular conduct of this defendant. We have two particular issues and two particular ships that are at issue. Number one is the Merida Marguerite, which was a German ship, had absolutely no nexus to the United States. There were no United States citizens, there was no United States interest with respect to that ship. Well, that's a little bit misstatement of the principles applied. It seems to me if it involved U.S. citizens and we have a different reason for asserting jurisdiction. Correct. But if we're talking about universal jurisdiction against piracy, that's an irrelevant question. It is. So a better question seems to me might be a twofold question as to what is the definition of piracy as recognized by international law. And if you have an act of piracy on the high seas that continues, this is hypothetical now, that continues into territorial waters is the whole act of piracy subject to the same court. Here your argument I gather is it's even more remote than that because Mr. Shiven was land side and on the German ship he came on later. Correct. On the quest he was, they did refer to him while he was out at sea, but they didn't find him or get him. He wasn't on that ship. Correct. So I'm not challenging the concept of universal jurisdiction with respect to the piracy aspect. So you don't need a U.S. contact for that? No, no, no. We'll get into that later with the hostage taking and the kidnapping and those particular issues, but first of all. You're just dealing with counts 1 and 7. At this present time, but I've raised all the other issues with respect to. I understand that, but this argument that you're about to land on only deals with counts 1 and 7. That's correct. And you have a lot of other bases for the sentence here. That's correct and that deals with. You're also a challenging bit on other grounds. Correct. But with respect to 1 and 7 being piracy and again whether or not from a plain reading of the statute it requires that whoever on the high seas commit acts of piracy according to the law of nations. The government relies upon unclosed to determine under 101 C. Can I ask you a hypothetical? This is just to find out the principle that you're standing on. If the attack is committed, a pirate act on the high seas, 12 pirates on a ship and they attack another ship. And as they're attacking and boarding the ship, the two ships drift into international, I mean into territorial waters. Is that an act that would be covered by 1651? I think it would because it began on the high seas. Correct. I think if it occurred totally in territorial waters, no it would not. But your concept or your hypothetical. Okay, now let's take the hypothetical one step further. If the attack begins on the high seas and then the loot is taken on shore and handed to the head of the pirates. Is the head of the pirates part of the act of piracy? No. Okay. So define the line between the piracy that you agreed even though it gets into territorial waters. Where does it cut off? 12 miles. No, no, no. We agree the act of piracy in my hypothetical began on the high seas and the boats drifted into the 12 mile zone. But they were still doing the act of piracy. They were still boarding the ship and you said that's still the initial contact. Correct. But at some point it gets cut off, right? It does. And how do we define that? You define it by the place of the actor. And the place of the actor in your hypothetical is on land the same way that Shabin was on land. Well, let's put him at 11.5 miles on the mothership and they launch these vessels to go out and commit the act of piracy. He's on that mothership. Can we get him as a pirate? No, because he's never left the territorial waters of Somalia. And if you look at the reading of 101, if you look at the definition of high seas, number one, we contend that it's a simple case of... In your hypothetical, I assume the act of piracy, the taking of the ship, was on the high seas. Correct. But the coordination was done from a mothership in territorial water. Correct. And you're saying the people on the territorial, on the mothership, are not part of the act of piracy? No, I'm not saying that. I'm saying they're not prosecutable under United States law for the act of piracy. Under this provision of the United States law, because you haven't gotten to your arguments about other provisions of the United States law where this wouldn't be a bar. That's correct, but they're certainly prosecutable under a host of other nations' issues. Somalia prosecutes people, Kenya prosecutes people. Well, let me ask you, is the person directing the operation from the mothership part of the crime of piracy? Not under United States law. No, we're talking about international law. Under international law, yes, he could very well be prosecutable under other countries' definitions of that. No, I'm not prosecutable. I'm asking is, I'm trying to find out what piracy is. And you've told me that piracy, if it begins on the high seas and the two boats are drifting in while they're boarding the ship, that's still an act of piracy on the high seas. If we have the hypothetical that Judge Floyd did, which is the mothership is 11.5 miles out, directing the operations, and they launch three little vessels that go out into international waters, and the mothership then directs it. They have radar, and they have satellite view, and they direct the three ships for the act of piracy. They board the ship, and then they bring the loot to that mothership. Is that mothership part of the act of piracy? No, for two reasons. Number one, under United States law, it has to be an actor on the high seas. That's the plain reading of the statute. Number two, under the covenant. It depends. If it's one crime, and the crime is like an ink blob, half of it's in the international waters, and half of it's in territorial waters, where is the crime? The crime is those actors that are on the high sea that commit the crime, but the second part of my answer to your hypothetical is found under the provisions of the UNCLOS article, and that is Article 86, which is the preamble to the United Nations Convention on the Law of the Seas. Article 86, applications of the provisions of this part. The provisions of this part apply to all parts of the sea that are not included in the exclusive economic zone in the territorial sea or in the internal waters of a state. So the United Nations Covenant on the Law of the Seas specifically sets forth what has to be conducted. See, that still begs the question. The question is where does it occur? In other words, I'm suggesting to you that complete acts of piracy began on the high seas, and the continuum of conduct included conduct from the mothership, which was in territorial waters. And you're saying that is not part of the piracy. The piracy, you break up the crime. It's like a bank robber. The bank is in the high seas, and the getaway car is right in front of the bank, but it happens to be at 11.5 miles out. So the bank robbers go into the bank, rob the bank, and get into the getaway car. The driver of the getaway car didn't commit bank robbery. He didn't commit piracy under your theory, right? Correct. Okay. And it's a simple just reading of the statute, and Congress could easily amend the statute to say whoever on the high seas or aides and abets went on the high seas. And I don't think we'd have gridlock over that issue. Well, I'm not talking about aides and abets. I'm talking about the actual conduct of piracy. I'm trying to make it as difficult. In other words, I'm trying to – the cohesive act of piracy. I don't want any assistance. I want the actual pirates. Correct. And part of the pirates are on one side of the territorial line, and the others are at the high seas. But they're all working together on one act of piracy. Correct. And when you look at Article 101 of the UNCLOS, which is the definition of piracy, which this Court adopted in DRA, you have those three particular aspects. A, illegal acts of violence. And then it talks about on the high seas against the ship or aircraft. Then B, voluntary participation. And then C, the act of inciting or facilitating. So that defines what aspects of piracy – What's wrong with that C? Nothing's wrong with C, but it just doesn't apply in this particular case because of the aiding and abetting. And the example would be that if – Well, I thought you defined piracy according to that statute, and that statute includes C as part of piracy, right? It does, but it requires B on the high seas. The aiding and abetting, you're saying that the person that is assisting has to be on the high seas. Correct. I don't see that in the statute. The statute says aiding and assisting the conduct on the high seas, but C doesn't say anything where they are, right? It doesn't, but 86 – What if he's on an airplane? But 86 says that you have to be on the high seas, which is the preamble, and it applies that provision to every part of the law. So when you read 86 of the article, which says that these provisions of this article apply to all parts of the sea outside of the territorial sea or the internal waters of a state, that is the basis then from which you read 101. You can't read them separate and apart. Could you say that the act of piracy takes place on the high sea as required by the introduction, takes place on the high seas where the attack is, and the act of piracy includes anybody, wherever they are, who facilitates it? As long as those people are on the high seas. But you're asking us to ignore section 101's plain text, and if we granted that, wouldn't it create an anomaly in the international definition of piracy? No, sir, because we have a specific reading of the United States Code in which Congress has specifically intended that an individual has to be on the high seas to be guilty of piracy. You cannot presume that the expanse of extraterritorial jurisdiction applies to aiding and abetting. That's a personal jurisdiction notion, and universal jurisdiction is a notion over the crime. And what my questions to you, and I'm not indicating how this should go. And I'm trying to answer. Oh, no, you're doing fine. You're doing great. You're probably a pirate expert. I hope not. I've been called worse, though. But the question, I guess, is if the international law defines piracy to have been the commission of a piratal act on the high seas, as well as anybody who facilitates that. And then let me add, hypothetically, from wherever he's located. Is that a possible way to construe the statute? No. And the reason I say no is because, in answer also to Judge Floyd's question, you have to read these sections so they make sense. You have to read them so they're not in conflict. Well, I'm trying to make sense, because clearly, if you have three ships involved in piracy, and two of the ships are in international waters, and one's right over in the territorial waters, I think every law-abiding, every international law nation would want that prosecuted as an act of piracy. May I pose a hypothetical? Well, we have to go, as you say, maybe we use the United Nations Treaty as the definition. And that's the question of reading. Let me, perhaps, if I could, just in a few minutes that I have left, pose a hypothetical that I think maybe could explain my situation. If you look at Article 103, it defines a pirate ship. And it defines a pirate ship as one that is intended by the persons in dominant control to be used for the purpose of committing one of the acts referred to in 101. So then we turn to 101. What are one of the acts referred to in 101? Well, it could be an act of voluntary participation, which is B, in the operation of a ship or an aircraft with the knowledge of facts making it a pirate ship. You can read those two sections together, and that ship would never have left territorial waters. Would we consider that to be, under the government's theory, that would still be piracy, even though that ship… What's the act of piracy? What's the first section, A? Any acts of illegal violence or detention or acts of depredation. And doesn't say on the high Cs? It does. Okay, that's fine. But B doesn't say on the high Cs. I know. So the question is, how do we read that? If A says on the high Cs, and then C says anyone who facilitates that on the high Cs, it doesn't necessarily read that the C person has to be on the high Cs himself. That's just one way of looking at it. My answer is that if you – the example that I gave, that you could be on a ship, which is intended to be a pirate ship, which is intended to facilitate the piratical cruises that these people are on, and you could be voluntarily – Piratical? I think that's the word, isn't it? It's good. You're the expert. I saw that word in there somewhere. I thought I'd throw it in. And you look at B, and it talks about act of voluntary participation, which does not include any high Cs language whatsoever. So if you take the government's argument to its logical conclusion, you could be on a pirate ship, intended to be on a pirate ship, voluntarily involved in the operation of a pirate ship, and never leave the high Cs, and that would be a piracy under the United States Code? Because you still have to satisfy A. No. A, no, because high Cs is located under A-1. B contains no provision as to high Cs, and that's what Your Honor's question was. C contains no provision as to high Cs. I understand, but then C has to facilitate an act that is on the high Cs. A or B. C can be in B also. B has no independent requirement for high Cs unless we adopt your position. Correct. And it makes no sense otherwise. And it makes no sense in conjunction with the statute and the plain reading of the statute. And I see my time is up, and maybe I can get to some other issues on the rebuttal. Thank you. I hope I've answered your questions. You want to cut off the United States to answer them, then, right? All right. Thank you. Thank you. All right. Mr. Hatch? May it please the Court, Ben Hatch on behalf of the United States. Your Honor, this case involves the modern business, the organized crime of Somali piracy, and one of its leaders, Mohammed Chabin. And under international law and under United States domestic law, which are actually mirror images of one another. Are actually what? Mirror images of one another. Maybe, maybe not. I would argue, Your Honor, and I'm happy to address the Court's question. First off, you can tell me, how is it that the United States attorney decided to bring these charges with respect to the Merida Marguerite? Yes, Your Honor. I read in the paper, the New York Times this morning, that somebody that financed the Merida Marguerite is being tried in Germany. And since none of these people were citizens of the United States, it's not a United States ship, I wonder just what the rationale was. Well, Your Honor, Mr. Chabin was identified by the pirates who seized the American flag sailboat, Quest, and the four Americans on board. He was identified as their negotiator. And that's how the investigation into Mr. Chabin. So you started out with that investigation, and then you added on the Merida Marguerite, because he'd been there, too, he thought, because of his connection there. He didn't go out searching for him for the Merida Marguerite. I just wondered if Germany earlier had problems about prosecuting pirates, or just sort of what the story was. Because the Merida Marguerite seems about as far from the United States as one can get. Well, I'd be happy to answer the Court's questions. And I can say, to me, I don't disagree, as Mr. Broccoletti said. It's not a U.S. vessel. There is no U.S. citizens on board. Many passengers, not a U.S. citizen among them. No disagreement about that, Your Honor. But I would point out, you know, at the end, when the Merida Marguerite was released, it was a U.S. frigate that waited to escort it to safety. But that doesn't give any back to its jurisdiction? No, no, I'm sorry, Your Honor. I was just trying to make the point that the fight against piracy off of Somalia is a fight that the international community, including significant U.S. resources, is engaged in, and that's why I think the United States, beyond its own citizens, its own ships, has... I thought that the international community engaged in it, too, and that's why I wondered why some other member of the international community didn't go after the Merida Marguerite, because it seemed to have ties with Bangladesh, India, Ukraine, and it was a German ship. So it seems that a lot of people had more ties. For sure, Your Honor. And these cases, we've been doing these cases for about three years in Norfolk, and pirates are prosecuted by various nations. And in several of the trials we've had, we've called British witnesses, we've called the German witnesses here. They reach across all the nations. My point is it is a common fight. And so U.S. ships are escorting foreign vessels across the Gulf of Aden. They don't say you have to be a U.S. ship for us to provide you safety. We'll give you a convoy. The immediate answer as to how it got here was that you already had this individual with respect to the piracy of the quest. Yes, Your Honor. To get back on Your Honor's question, I really just meant that as a point. But Mr. Chabin was indicted on the U.S. charges. He was captured, and the Germans told us, hey, that's the same individual who was the negotiator on our ship. When you started out, you said that you thought that they were mirror images. Yes, Your Honor. Well, why do they both exist, both of these federal statutes, if they're all mirror images? Well, Your Honor, because, and this was the subject of the DRA appeal, the Congress created Section 1651 to incorporate the international law. And so that is explicitly what it says, whoever commits piracy in violation of the law of the nation. What about 1201, kidnapping? What about conspiracy to commit violence against maritime navigation? Is that a mirror image of 1651? Oh, no, Your Honor. I was only talking on the piracy count. Why isn't it? Why isn't 1201 and 2280? Well, Your Honor, I think 1201 and 2280 were other enactments by Congress for specific purposes. So, for example, 2280 was an enactment to follow the SUA convention, the suppression of unlawful acts against maritime violence. What acts does 2280 get, 1651 doesn't, or vice versa? Well, in this case, as we've argued, Your Honor. Tell me about some other, any case anywhere. You don't have to stick with this case. Give me a hypothetical that one of these statutes would go to and another one wouldn't. Under the government's theory, I couldn't find one. That's why I'm asking. Oh, I see. Maybe I should grab my statute book. 2280 has so many sections that we didn't charge here. I'm talking about 2280A1H, which is what you did charge. Right. In this case, there's no disagreement that our facts of this case are overlapping with the scope of piracy law. But if I could take 2280, there are many other provisions or the 1203 hostage-taking that could apply in many different contexts. How can he be convicted of both of these crimes if they're identical? Well, I think that on the facts of this case that they're similar, but they would all pass, for example, the Blockberger test of being separate element crimes. I'm asking you to sort of help me with that. Okay. It certainly is true as far as… He opened the book for you if you wanted the book. If you adopt what your colleague is saying, they certainly have different elements. But if we adopt the government's theory, I don't see what different elements they have. I'm sorry. The argument, Your Honor, under Blockberger, of course, is not whether in a particular case that the elements of two different statutes overlap in their application. It's whether they could have different proof, not on the facts but in theory. I should point out this wasn't an issue of contention below in this case. That's your best argument. They never raised it. Commonly, let's go outside the piracy context. When I do a Hobbs Act case here in the United States or a drug case, there's many times when, okay, I have a drug-involved premises. I have a 846 drug conspiracy count, and they may all involve proof about the person dealing drugs out of their home. But those elements are going to pass the Blockberger test because in the drug-involved premise I have to prove that there was a house, whereas I don't in the conspiracy count. In conspiracy, I have to prove there was an agreement, whereas I don't in the drug-involved premise. Similarly for here, for example, on the hostage-taking counts, it's going to have its own elements versus some of the other offenses. So we could proceed offense by offense, but there's no dispute they were overlapping on the facts of the case and all within the realm of international piracy. Can I ask you, with respect to counts one and seven, how far do you suggest the act of piracy continues? For instance, you can start anywhere. The person who finances it, is he a pirate under 1651? The person who designs the plan? How about the person who maintains the pirate ships? How about the person who invests the money? How about the negotiator who negotiates the deal? Are they all pirates under 1651? Yes, Your Honor, 1651 in conjunction with Section 2, the aiding and abetting statute. The answer is yes. I mean, the fact of Somali piracy is it is an organized crime. The men who go out to sea are just one aspect of this crime, but they often don't have any money. These are desperate men looking to make a buck. The ones with the money, the financiers, are the ones who make it possible. They fund the ships. They fund the weaponry. When the ship comes back, these ships are usually held for any number of months, sometimes years, and so while that ship is held, they will bring on additional security to hold the hostages and to protect the ship from other groups in Somalia who might try to take it for themselves. The piracy that's adopted in Counts 1 and 7 is, as we established and I think is clear now in the Fourth Circuit and maybe everywhere, it's an old law, right? It was known in the founding of the Republic. Yes, Your Honor.  Or the person that financed the ship, or anybody except people that were actually on the ship. Doesn't that give a little credence to, you know, the Supreme Court's asking us always to go back and look at what the founders thought about statutes and the Constitution and so forth. Doesn't that give you a little pause about putting aiding and abetting in here? Well, certainly, Your Honor, and I hope we were thoughtful about the history of it when we did these cases. And what I would say is, first of all, in the DRA case Let me just stop back a minute. It makes no difference in this case whether Counts 1 and 7 are struck or not, because the sentence stays the same no matter how many counts. It would make a very big difference to the United States, Your Honor, not obviously on the bottom line sentences of this case, but on the matter of who is a pirate, which is a matter that comes up for our prosecutors, for our Navy. This is the second case. There's one in the D.C. Circuit. There is one in the D.C. Circuit. But, again, this is an issue that's bigger than just necessarily who gets prosecuted. But it can't come up too often since there are only two. Well, there's only two in the United States, Your Honor. I assume that's all you care about is the United States. No. Well, that's closest to home for me, Your Honor. As a global matter, you care about the world. I do. Prosecuting cases, you care about the United States. I do. But this is international law. So I certainly care about the United States. But were this to set a precedent that these people weren't involved, for example, the United Nations Security Council in Resolutions 1976 and 2020, I believe has clearly stated that it considers the shabins of the world, the financiers, the negotiators, to be included within the international definition of piracy under the reflected and unclosed. Well, what about your colleague's argument? Couldn't Congress just insert aiding and abetting in 1651 rather than you relying on 1802? Well, they certainly could, Judge Floyd. But, again, they could do that in any statute. Instead, they chose to do Section 2, which covers all federal statutes. So I see no reason why they should have to do aiding and abetting in 1651. It's repeated in a lot of other statutes. In fact, in I think all of the other statutes that are issued in this case, they don't rely on Section 2. Sometimes it's one of those things, sometimes Congress will put it in a statute and sometimes they'll rely on Section 2. But I think Section 2, again, just creates the exact mirror with respect to Counts 1 and 7 that international law has, which is the United States doesn't dispute. Under United States law, there is the high-seas requirement in Section 1651. So some aspect of the crime must be committed on the high seas. But then you have aiding and abetting. And it's my experience in U.S. law that it's never required to prove under aiding and abetting that the individual himself satisfied the jurisdictional elements of the offense. No, this is a queer bird, the high seas and this whole stuff. Be sure. But then it goes back to the fact that piracy is such an old concept. And so to go back to your honors question, I would say, first of all, that the history of United States piracy prosecutions is very limited. So there was one in 1819. There was some attempt around the time of the Palmer case. That was what, 1818? That's right. And they said something in there that seemed to restrict the person who advises is a foreign sovereign. I mean, a citizen of a foreign sovereign would hardly be a pirate, something to that effect. That's right, your honor. And I appreciate the court taking me to Palmer because I did want to address that. What Palmer was concerned with was that that was the precursor statute, Congress's attempt in 1790 to get at piracy. And there they said that piracy includes murder and robbery on the high seas. And even to the point where if two foreigners on a foreign ship, one of them robbed the other of five bucks, that would have been covered under this and subject to the death penalty. And obviously the court was concerned that perhaps Congress had gone very broadly and it would not construe the statute that broadly. And there was a specific in that act, there was a specific accessory before the fact. It was similar language to aiding and abetting provision. And I think Chief Justice Marshall said, you know, that does reach everything the principal liability would reach. And so if we were to construe it, we'll have the same restriction because it would be ridiculous to think that a foreigner advising another foreigner to rob someone on a foreign ship could be subject to aiding and abetting liability. Is that exactly what we have with the, not with the quest, but the other ship? No, Your Honor, because, so then 1651 came right after Palmer. And it was clear, there's not a lot of legislative history, but it was clear, and I think the court said this in Deerey, that Congress was saying, okay, you know, the murder and robbery on an individual ship, that was held to be not part of the international definition of piracy, so we'll just lock in the international definition by referencing the law of nations. This all goes in a circle, depending on what you think the international definition is. Well, there's no dispute that the people who seized the Merida Marguerite committed the international crime of piracy. Mr. Broccoletti doesn't dispute that. I don't think it could be disputed. It was seized on the high seas by force and violence. I think both of them were pretty much conceded to be acts of piracy. I think the question is whether those acts of piracy include shipping. Right, and so then my point, to go to the distinction from Palmer, is we don't have a situation of the foreigner in a foreign territory advising a foreigner to commit robbery on a single ship. What we have is the allegation that Mr. Chabin aided and abetted the international crime of piracy. And knowing that he's aiding and abetting an international crime, he's obviously on notice that he's subject to prosecution by the entire world. I mean, to take just the example of what he did on that ship, it was a German-owned ship that was crewed by a Ukrainian, Bangladeshis, and Indians. He made international phone calls to Germany, and he demanded a ransom payment of $5 million U.S. dollars. That's what they like to use in Somalia, $5 million U.S. dollars. And so there really can be no claim he didn't understand that he was committing an international crime, I think. His crime reaches out across the world and affected people in many different countries. And so what the piracy definition says is that person's subject to prosecution by all. In this case, we had him here on the quest, and if we can bring justice for everybody who someone has victimized, in this case, we wanted to do that. And so we superseded the indictment and charged him with both sets of offenses, and the jury found him guilty. If I could, Mr. Broccoletti talked a lot about Article 86, and I just think that's a red herring as to the restriction on the high Cs. If you see how UNCLOS is organized, it'll have at the beginning of each section a description about what the section's about. And that's all Article 86 is saying, is this is generally the high Cs areas. But the specific 101 is quite clear in 101A that that's where the high Cs comes in, and then 101C. How about his argument that combines 101C and 101B? Neither one of them have any relation to the high Cs, and therefore if you got an offense under 101C, he had a hypothetical. He said that under your argument, that would be piracy. Under 101B, the pirate ship, yes, Your Honor. And what was that factual scenario? So a 101B type offense that would be, let's say, to take Judge Floyd's example, you got the mother ship that's patrolling just inside territorial waters, so about 11 miles out. Let's say they haven't reached out into international waters yet, but their goal obviously is to go out there and engage in piracy. And a U.S. frigate were to observe them doing that. Under 101B, they would be considered a pirate ship at that point. Their intent is to go out and engage in acts of piracy on the high Cs. So they would meet the international definition of piracy under Article 101B. However, they would not meet the U.S. criminal prohibition of piracy under 1651 because 1651 has its own high Cs requirement in it. So they would not then have met the high Cs requirement. So that Navy ship may be authorized under international law to go interdict them in territorial waters. There are specific provisions about that. But me as a prosecutor would not have a 1651 case against them yet because they haven't committed an act on the high Cs. Once they've committed the act on the high Cs, as they did in both of these cases, seizing both of these vessels on the high Cs, I then have a 1651 offense. And what U.S. law says and what international law says is everyone who's operating as part of that organized crime is now therefore chargeable and prosecutable under that definition. What's the best case we have that would reach somebody like Shiven for piracy on the high Cs? Is there an international case anywhere that comes closest that we should use? We just have to read the UNCLOS or whatever you call it. You want us to make it up. It could be the case. Well, this court was the case in Deere and I think that that opinion was followed in the D.C. circuits, or at least in the D.C. district court so far. And I would add that... Following 101, basically. Both 101 and domestic law. The district court in the D.C. came out the other way. Well, the district court followed this court's decision in Deere as to what the incorporated definition was. You used the analysis given by the district court here. I would not argue for that. You would be losing. That's correct. So I would argue against the specific analysis and really, again, it's the... Judge Niemeyer was asking you one case we could look to that had the specific analysis that you would like us to adopt. I don't think there is such a case. Your Honor, to specifically answer that, there are not, to my knowledge, extant authorities. Part of the issue, of course, is that... And I see my time's expired. If I could finish. Part of the issue, of course, is that the reason piracy works in Somalia is because of the lawless environment that exists in some of these areas where the pirates are able to operate from. And because there's no responsibility, it's extremely difficult to get the people who run it, who make it possible, who finance it and drive it and profit the most from it. And I think many nations have struggled. I would note that the British have engaged in airstrikes onshore pursuant to international law against piracy. And the United Nations Security Council has authorized actions against those who make it happen onshore under international law. But it's very difficult to get these people. It was very difficult to get Mr. Shibin, but we did get him. And if I could just conclude something I mentioned earlier to Judge Motz. I mean, this is extremely important to the United States that we believe this was fully consistent with international law of piracy. The prosecution of Mr. Shibin. In the middle of your argument, you quoted to me or referred to some international law that you thought supported your position. Do you know what I'm talking about? Yes, I think the Security Council resolutions, Your Honor. Do we have a cite for them? I do, Your Honor, if I could flip to my brief here. Okay. Don't worry about it. Just one second. I'll have the page here. But our argument is that the plain language of the statutes clearly supports it to the extent you're going to go beyond. I understand that's your argument. But beyond the Security Council resolutions, Your Honor. How do we take the resolution? Do we take it as the UN's interpretation of UNCLOS 101? I think so, Your Honor. I think to the extent you're looking at an international authority, again, the plain text to me, they didn't include high seas in either aiding and abetting provision. The court could stop there. That's honestly I think where the court can stop. But to the extent the arguments made by the defense, you should look at some other authorities. Certainly, I think the Security Council, which is obviously the United States is represented on, represents many of the countries of the world as an important authority to look at. They support it. And, again, part of the law of piracy is not just the law that happens here in courtrooms, but it's the law that's applied out there at sea by the navies. We also cite several authorities on the law of the sea who discuss that these provisions extend to the land-based actors. So I would argue to the court that is the understood definition under international legal scholars, under the Security Council. And the fact is that there just haven't been many prosecutions because, of course, the guys who are successful on land are smart enough, generally, to stay on land where they're safe. And so they don't often get caught and prosecuted. These guys don't dress up like pirates, do they? No, they don't, Your Honor. They don't. Thank you, Mr. Hatch. Mr. Broccoletti? It's interesting you ask that question, Judge, because that's exactly what my children asked me when I took the case. We all have to be children at one time. Yes, sir. A couple of points. Number one, I believe that Mr. Hatch conceded my argument. I think when he conceded the fact that, B, the participation of a pirate ship or the voluntary operation of a pirate ship not on the high seas is not reachable under the statute, that is exactly the same argument that I'm making with respect to C, that there is no provision of being on the high seas, so therefore. Well, see, I think his argument reads a little bit, if I understand it, is that B would not need the high seas if you were following the statute, I mean the treaty, but that America puts a filter on its enforcement requiring the high seas. Correct. And therefore, A is the only one that would apply and, of course, C facilitating A. But C facilitating B could not be used in the United States because of 1651. I think that's his point. Okay, but I'm not going to belabor 101B and C, but when you read that, I think that that's not accurate. I think the B and C combine. Okay, fair enough. But I think that's your argument, though. All right. But, again, I think the premise, number one, is that we're not operating in a vacuum. There's an international community that's involved in the prosecution of these offenses. And as the Supreme Court, and I filed a 28-J letter with the court, as the Supreme Court recently said in the Coe Bill versus Royal Dutch Petroleum case. Oh, everybody had something to say about pirates in there. Right. And the court said, Applying U.S. law to pirates, however, does not typically impose the sovereign will of the United States onto conduct occurring within the territorial jurisdiction of another sovereign and, therefore, carries less direct foreign policy considerations. That's exactly what the government is trying to do here, impose the will. Well, actually, I think that's a little bit of a simplification, which probably doesn't work and engages our whole debate. Everybody agrees the act of piracy was the attack on the high seas. Correct. So we don't fall within the going into enforcing laws in the territorial waters. The question is where is that act of piracy extend to and who can enforce it? And the question here is the government's position, whether it's tenable or not, is that there may be land-based persons facilitating the piracy. Correct. And that they can be prosecuted by the international community in support of the act on the high seas. They can be prosecuted. It's exactly correct. They can be prosecuted by the international community, but for the fact that the United States has a separate statute, which has separate requirements, which are separate and distinct from the prosecutions under the international community. Which statute? High seas. Well, what's wrong with Section 2? It's because the extraterritorial reach of accomplished liability is presumed to be coextensive with that of substantive crimes. That's United States v. YACA, Y-A-K-O-U, 428 Fed 3rd, 241 from the D.C. Circuit. So if it's presumed to be coextensive with the substantive crime, the substantive crime is an act on the high seas. You can't extend it further. The substantive crime is an act on the high seas defined by 101. That's what everybody, Dyer seems to suggest that. Yes, sir. If I could turn to just one other brief. Yes, sure. Okay, I'm sorry. You take control of your own. No, no, no. You take control. You're the judge. No, it's very interesting. We could probably both sides go on for another hour on this and maybe be enlightened. Yes, sir. But with respect to the extraterritorial jurisdiction, to answer Judge Mott's questions, yes, there are a number of other charges involving the Morita Marguerite. We contend that hostage-taking, violence against maritime nations, kidnapping are not universal jurisdiction crimes. And therefore, there has to be a nexus between those offenses that were committed and this defendant in the United States. Brought in from the United States. Brought or found in the United States,  to be able to confer jurisdiction. Are those counts related only to the quest? No. Both Marguerite and the quest? Correct. On the quest, it's clearly jurisdiction of the United States citizens. We never even raised that particular issue. But I think that's where the Royal Dutch Petroleum case does come into play in the language of the Supreme Court because the United States law is being applied, the sovereign will of the United States, occurring within the territorial jurisdiction of another sovereign. That being the hostage-taking, kidnapping, violence against maritime nations, use of the firearm, the commission of those offenses. I'd suggest to the court respectfully, number one, they're not universal jurisdiction crimes. Number two, there's insufficient nexus between those offenses on the Marguerite and this defendant in the United States to be able to confer the jurisdiction on the United States to be able to prosecute those cases. And that's why I think that those cases should fail as well. Thank you. Mr. Hatch, would you take two minutes to respond to the jurisdiction on the hostage-taking? Certainly, Your Honor. Thank you. With respect to the counts related to the Merida Marguerite that are not the piracy counts, the law, I don't believe this circuit has directly held on this issue, but every other circuit that has considered the issue, I think would endorse the application of those statutes here. And specifically, that's the Yousef case from the Second Circuit, the Eunice case from the D.C. Circuit. And what those circuits hold is that certainly where the reach of U.S. law is consistent with international law, whether it be customary international law, what have you, that's a basis for jurisdiction. And that would be the piracy counts. But Congress is not bound to act exactly consistent with international law. Congress, as long as it's acting pursuant to a valid enumerated power in the Constitution, can pass statutes that don't track exactly international law. And so those would be the kidnapping, 1201, hostage-taking, 1203, and violence against maritime navigation, 2280. What's the jurisdictional basis for the extraterritorial application? So each one's clear that they apply extraterritorially. Each of them has several possible mechanisms for jurisdiction. And here the... Take the hostage-taking on the margarita. So here the statutory basis for jurisdiction is that Chivin was found in the United States. And the basis for that provision in many of these offenses is that many of these come from international conventions, treaties the United States has entered into. And what those conventions reason is that all the member countries want to deny anyone safe harbor in their own territory, even if they committed their crime somewhere else. So if you violated this convention abroad but are found here, you either have to extradite them or prosecute them under many of these treaties. And so that's why there's the found-in provision, so that if you find them in your jurisdiction, you must prosecute them. And so the found-in is what applies to those. So Mr. Chivin was found in the territory of the United States, and therefore the statutory jurisdiction is triggered. And each of those, and I don't believe this has been contested by the defense, but in any event, each of those... Statutory or personal jurisdiction? It seems to me, doesn't there have to be a U.S. interest in the crime itself? The universal jurisdiction is easy. We have adopted a notion, we're part of the fellowship of nations, et cetera. But hostage-taking in another territory, and the guy happens to end up in the United States, wouldn't we normally just send him to the territory where he committed the hostage-taking? Probably normally we would, but it's also available under these to prosecute him domestically. So I believe the only case that considers this in great detail is the Yusuf case from the Second Circuit. And in Yusuf, that defendant in that case attempted to bomb several planes abroad. But in many of them he was targeting U.S. planes or ones that we had an interest in. But for count 19, I believe, of the indictment, that count related to an effort he did that had no connection to the U.S., not the plane, not the people on board. And so the Second Circuit separately considered that count and said, there's no U.S. nexus similar to the Marita Marguerite, but Congress acted pursuant to a lawful power in passing the attacks on aircraft statute at issue there, and therefore Congress has spoken clearly, it applies to this defendant, and therefore will enforce it. The check, Your Honor, on the kind of idea that someone could be prosecuted abroad for something that they would never conceive of as a crime is the due process clause. We can't apply our laws where someone would have no thought that it was criminal what they were doing. But I would hasten to add here that there's never been a claim by Chabin that his prosecution violated the due process clause and his conduct was evidently illegal under the crime standard. Thank you.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Henry F. Floyd